IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA MARIE COX, an individual,

                Plaintiff,

     v.

NORTHWEST REGIONAL EDUCATION
SERVICE DISTRICT, a political subdivision
of the STATE OF OREGON and public body
corporate; DANIEL GOLDMAN, an individual
and in his official capacity; and DEBBIE L.
SIMONS, an individual and in her official
capacity,

                Defendants.

Case No. 3:22-cv-01073–HZ (Lead Case)
Case No. 3:22-cv-1894-HZ (Trailing Case)

**OPINION & ORDER**

Tyler D. Smith
Tyler Smith & Associates P.C.
181 N. Grant St., Ste 212
Canby, OR 97013
Yasha Renner
Renner Law Firm, P.C.
429 N. Water St. Ste B
Silverton, OR 97381

       Attorneys for Plaintiffs

Barrett C. Mersereau
The Law Office of Brett Mersereau
2100 NE Broadway, #119
Portland, OR 97232

     Attorneys for Defendants

HERNÁNDEZ, District Judge:

     Plaintiffs Jessica Cox, Judy Durkee, Christina Lethrud, Carrie Erlandson, Katey Baker, and Janel Price bring these consolidated actions against Defendants Northwest Regional Educational Service District ("NWRESD"), Daniel Goldman, and Debbie Simons, alleging Title VII and state law religious discrimination claims as well as claims for alleged violations of their rights to procedural due process under the Fourteenth Amendment and free exercise of religion under the First Amendment. Plaintiffs move for partial summary judgment on some of their claims, and Defendants move for summary judgment against all of Plaintiffs' claims. For the reasons below, Plaintiffs' motion is denied and Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I.    The Parties

     Defendant NWRESD serves a "wide-ranging population of students of all ages, many of whom are impacted by disabilities." Goldman Decl. ¶ 2, ECF 56. Defendant Goldman is the superintendent of NWRESD. *Id.* ¶ 1. Defendant Simons is NWRESD's Chief Human Resources Officer. Simons Decl. ¶ 1, ECF 57.

     Plaintiffs are six individuals formerly employed by Defendant NWRESD:

     Plaintiff Jessica Cox was an Autism Spectrum Disorder Consultant serving five different elementary schools in the Tigard-Tualatin School District. Cox. Decl. ¶¶ 11-12, ECF 41. Her "home base" was a shared cubicle office space at a NWRESD facility in Hillsboro, Oregon, but

during the 2021-2022 school year she worked in person at all five elementary schools from September 8, 2021, until she was placed on administrative leave on October 19, 2021. *Id*. ¶¶ 13-14. Defendant Cox's job description was "[t]o provide assistance to staff of component (local) school districts and the NWRESD regarding services for students suspected to be, or identified as eligible for special education services under the autism disability." Simons Decl. Ex. 1. Essential functions included, among other things, assisting with evaluations for determining student eligibility for special education services; conducting "individual student observations in the classroom setting"; assisting and communicating with staff and parents; and participating in workshops, inservices, and meetings. *Id*.

Plaintiff Judy Durkee was employed by NWRESD at the relevant time as an Early Childhood Education Specialist assigned to the Head Start team. Durkee Decl. ¶ 6, ECF 42. During the 2021-2022 school year, she "had a mix of in person and virtual classes" at four different Head Start preschool locations in Hillsboro, Oregon. *Id*. ¶ 8. Plaintiff Durkee's job description was "[t]o provide educational programs and/or consultation to parents and community pre-schools to meet the individual needs of children with disabilities and/or special needs, from birth to five years of age." Simons Decl. Ex. 6. Essential functions included, among other things, assessing children and developing individualized family service plans; establishing and reinforcing curriculum "through baby groups, toddler groups, pre-school self-contained classes and language groups"; providing "consultation, education, and support to parents through home visits, day care visits, and community pre-schools for needs of children with special needs"; and occasionally providing inservice to staff and students. *Id*.

Plaintiff Carrie Erlandson states that she was employed by NWRESD as an Instructional Assistant in the Early-Intervention/Early Childhood Special Education Program. Erlandson Decl.

¶¶ 3-4, ECF 44. During the 2021-2022 school year, she had a mix of in person and virtual classes at four different preschool and elementary schools. *Id*. ¶ 5. Defendants provide evidence that Plaintiff Erlandson was employed as an "Early Childhood Education Specialist," the same position held by Plaintiff Durkee, with the same duties. Simons Decl. ¶ 22. Although the evidence conflicts as to Plaintiff Erlandson's job title, Plaintiffs do not appear to argue that the job description provided by Defendants for Plaintiff Erlandson's position was not the one applicable to her position.

Plaintiff Katey Baker states that she was employed by NWRESD as an Instructional Assistant in the Early Childhood Special Education program. Baker Decl. ¶ 6, ECF 45. She worked in person at a preschool in Beaverton, Oregon. As with Plaintiff Erlandson, Defendants contend that Plaintiff Baker was employed as an Early Childhood Education Specialist, Simons Decl. ¶ 25, but despite the different job titles Plaintiffs have not argued or contended that the job description provided by Defendant Simons for Plaintiff Erlandson's position was not the one applicable to her position. Because Plaintiff Baker has the same job title as Plaintiffs Erlandson and Durkee, her job description is the same.

Plaintiff Janel Price was employed by NWRESD as an administrative assistant assigned to the Hillsboro Early Childhood Center. Price Decl. ¶ 4, ECF 46. The Hillsboro Early Childhood Center is a preschool and office building. *Id*. ¶ 5. Defendants contend that Plaintiff Price's essential functions included, among other things, greeting and assisting "staff, students, family, volunteers, agency partners and community members both in person and by phone;" receiving and directing substitute teachers, and providing a variety of secretarial duties. Simons Decl. Ex. 19. Plaintiff Price testifies that throughout her employment she was "never…required

to work with students, children, or families as a requirement of my position, except to communicate with parents by phone or email." Price Decl. ¶ 9.

Plaintiff Christina Lethrud is a licensed speech-language pathologist who was employed by NWRESD in the Early Childhood Special Education Program during 2021-2022. Lethrud Decl. ¶¶ 2, 3, 8, 9, ECF 43. Plaintiff Lethrud's job description was to "evaluate[] and provide[] Speech/Language therapy services to children who have mental and/or physical disabilities…" Simons Decl. Ex. 10. The essential functions listed include, among other things, working collaboratively with parents and staff; screening and identifying communication disorders; providing training and supervision to instructional assistants; and "maintain[ing] communication with other professionals, general staff members, parents and other public and private agencies related to child's needs, progress and safety." Simons Decl. Ex. 10.

## II.    Vaccine Mandates

### A.    OHA Vaccine Mandate

On August 25, 2021, in response to the COVID-19 pandemic, the Oregon Health Authority ("OHA") adopted Or. Admin. R. ("OAR") 333-019-1030  ("The OHA Vaccine Mandate"). Renner Decl. Ex. 4, ECF 40. That rule provided that, after October 18, 2021, "[t]eachers, school staff and volunteers may not teach, work, learn, study, assist, observe, or volunteer at a school unless they are fully vaccinated or have provided documentation of a medical or religious exception." OAR 333-019-1030(3)(a). Schools or school-based programs that granted medical or religious exceptions were required to "take reasonable steps to ensure that unvaccinated teachers, school staff and volunteers, and school-based program staff and volunteers are protected from contracting and spreading COVID-19." OAR 333-019-1030(5). The rule also provided that "[n]othing in this rule is intended to prohibit schools or school-based

programs from…[h]aving more restrictive or additional requirements." OAR 333-019-1030(13).

The definition of school included those that offered kindergarten through grade twelve but

excluded "stand-alone pre-school program[s]." OAR 333-019-1030(2)(f).

     B.    NWRESD Vaccine Mandate

After the adoption of the OHA Vaccine Mandate, Defendant Goldman decided to require

all NWRESD employees to be vaccinated or obtain an exemption, "regardless of whether they

were specifically required to do so by [the OHA Vaccine Mandate]." Goldman Decl. ¶ 6. He also

decided that, after October 18, 2021, no unvaccinated staff would be placed in positions

requiring "direct contact" with students based on his determination that the potential risk was too

great. *Id*. In other words, under NWRESD policy, all "student-facing employees" were required

to be vaccinated. Renner Decl. Ex. 12 at 4-8. This requirement—the "NWRESD Vaccine

Mandate"—applied to staff at facilities beyond those subject to the OHA Vaccine Mandate.

Goldman Decl. ¶ 6.

Defendant Goldman made this decision, in part, because NWRESD serves students who

are "severely disabled and/or medically fragile" and "are more vulnerable to death or severe

injury from COVID-19 than a general student population would be." Goldman Decl. ¶¶ 2, 6;

Simons Decl. ¶¶ 4, 5.[1] He also explained that the mandate was necessary due to the lack of

access of preschool-age students to the vaccine. Goldman Dep. 21:11-22, ECF 62-2. At the time

of the decision, students under age 11 were ineligible to receive any COVID-19 vaccines.

Simons Decl. ¶ 7. The NWRESD Vaccine Mandate was not a written policy. Renner Decl. Ex.

10 at 2-3. Defendants relied instead on the OHA Vaccine Mandate as the "written policy" for its

---

[1] Plaintiffs object to the admission of this evidence. For the reasons explained later in this opinion, the Court finds that this testimony is admissible on the issue of Defendant Goldman's reasons for imposing the NWRESD Vaccine Mandate.

own broader vaccination mandate. *Id.*

### III.  Vaccine Exemptions

NWRESD provided exemptions from the vaccine mandates for religious and medical reasons. Defendant Simons was responsible for evaluating employees' requested exemptions. Simons Decl. ¶ 8. Defendant Simons granted a religious exemption to each employee who requested one. *Id.* She then evaluated the essential functions of each employee's position in order to determine "whether they could safely return to work, and whether there existed a vacant position that did not involve face-to-face student or family contact, into which the employee could be transferred" (*i.e.*, what accommodations could be made). *Id.* She used the same process for employees applying for medical exemptions. *Id.* "If no transfer was available to an employee, and the employee's position required in-person contact with students, the accommodation provided to the employee was unpaid leave." *Id.* ¶ 9. Defendant Simons viewed any position as student-facing "[i]f there were students and families in the building or the potential to be in the building." Simons Dep. I 20:1-3, ECF 40-33.

####  A.  Jessica Cox

Plaintiff Cox worked in person at all five schools she was assigned to from the first day of the 2021-2022 school year through October 19, 2021, the day the vaccine mandates went into effect. Cox Decl. ¶ 14. Before that time, NWRESD required those working in person to comply with safety protocols, including "physical distancing, wearing a face covering (regardless of vaccination status), and unvaccinated staff had to test weekly for COVID and could not eat around others." *Id.* ¶ 16.

On September 24, 2021, Plaintiff Cox submitted a request for a religious exemption from the OHA Vaccine Mandate. Cox Decl. Ex. 3. On October 1, 2021, Defendant Simons sent

Plaintiff Cox a letter notifying her that her request for a religious exemption to the OHA Vaccine Mandate was approved and that because no remote work or alternative assignment was available, the accommodation granted was unpaid administrative leave. *Id*. Ex. 4. Plaintiff Cox followed up with human resources employees, including Defendant Simons, explaining that her work could be completed remotely. *Id*. Exs. 5-6. Defendant Simons met with Plaintiff Cox on Wednesday, October 13, 2021, to discuss her concerns, but she ultimately denied Plaintiff Cox's request to work remotely. *Id*. Ex. 7; Simons Decl. ¶ 11. Plaintiff Cox worked in person the week of October 11, 2021, but her unpaid leave went into effect October 19, 2021. Cox Decl. ¶¶ 15, 17.

In February 2022, Plaintiff Cox was offered a transfer to another NWRESD-operated facility, but she declined. Simons Decl. ¶ 12. Plaintiff Cox did not believe herself to be qualified for the position offered. Cox Decl. ¶ 30. In May 2022, Plaintiff Cox was authorized to return to work under COVID-19 safety protocols, but she did not return. Simons Decl. ¶ 13.

B.    Judy Durkee

At the beginning of the 2021-2022 school year, Plaintiff Durkee was working both in person and virtually. Durkee Decl. ¶ 8. Plaintiff Durkee served only six students, four of whom were in person, and two virtual. *Id*. ¶ 9. Before the effective date of the vaccine mandates, Plaintiff Durkee was allowed to work in person so long as she complied with distancing, masking, testing, and other COVID-19 safety protocols. *Id*. ¶ 14.

On September 8, 2021, Plaintiff Durkee requested a religious exemption from the OHA Vaccine Mandate. Durkee Decl. Ex. 2. On October 1, 2021, Defendant Simons sent Plaintiff Durkee a letter notifying her that her request for a religious exemption from the OHA Vaccine mandate was approved and that because no remote work or alternative assignment was available, the accommodation granted was unpaid administrative leave. *Id*. Ex. 3. Plaintiff Durkee met with

Defendant Simons on October 15, 2021, regarding the accommodation. *Id*. ¶ 11. She explained to Defendant Simons the reasons that she believed her job could be completed remotely. *Id*. Plaintiff Durkee's request to work remotely was denied because, according to NWRESD, no such positions were available and NWRESD was moving away from remote work as it transitioned to having students in person. Simons Decl. Ex. 7. Although Plaintiff Durkee's unpaid leave was initially postponed to accommodate the October 15 meeting, she was placed on unpaid leave effective the date the vaccine mandates went into effect. Durkee Decl. Ex. 4.

Plaintiff Durkee was notified in May 2022 that she could return to work, but she declined to do so. Simons Decl. ¶ 17-18. She had already accepted temporary employment with another district. Durkee Decl. ¶ 16. She resigned from NWRESD and retired because she felt that the work environment at NWRESD was hostile to unvaccinated people, "especially people like myself who have religious objections to the COVID vaccines." Durkee Decl. ¶ 18.

C.    Carrie Erlandson

At the beginning of the 2021-2022 school year, Plaintiff Erlandson was working both in person and virtually. Erlandson Decl. ¶ 5. Before the effective date of the vaccine mandates, Plaintiff Erlandson was allowed to work in person so long as she complied with distancing, masking, testing, and other COVID-19 safety protocols. *Id*. ¶ 6.

On August 31, 2021, Plaintiff Erlandson requested a religious exemption from the OHA Vaccine Mandate. *Id*. Ex. 1. On October 1, 2021, Defendant Simons sent Plaintiff Erlandson a letter notifying her that her request for a religious exemption to the OHA Vaccine mandate was approved and that because no remote work or alternative assignment was available, the accommodation granted was unpaid administrative leave. *Id*. Ex. 2. Plaintiff Erlandson met with human resources staff on October 4, 2021 to discuss the accommodation. *Id*. ¶ 7. The meeting

was brief, and Plaintiff was told she was "being put on unpaid leave until further notice unless I took the vaccine, and then I could have my spot back." *Id.* Plaintiff Erlandson's unpaid leave went into effect on October 11, 2021. *Id.* ¶ 10.

On February 24, 2022, Defendant NWRESD offered Plaintiff Erlandson a transfer to a position at another facility, but Plaintiff declined. Simons Decl. I ¶ 23; Erlandson Decl. Ex. 4. Plaintiff Erlandson resigned on March 28, 2022. Erlandson Decl. Ex. 5.

D.    Katey Baker

Before the vaccine mandates went into effect, Plaintiff Baker was working in person at a preschool location operated by Defendant NWRESD. Baker Decl. ¶ 6. Plaintiff Baker was allowed to work in person so long as she complied with distancing, masking, testing, and other COVID-19 safety protocols. *Id.* ¶ 8.

On September 18, 2021, Plaintiff Baker requested a religious exemption from the OHA Vaccine Mandate. *Id.* Ex. 1. On October 1, 2021, Defendant Simons sent Plaintiff Baker a letter notifying her that her request for a religious exemption to the OHA Vaccine mandate was approved and that because no remote work or alternative assignment was available, the accommodation granted was unpaid administrative leave. *Id.* Ex. 2. Plaintiff Baker met with Defendant Simons on October 12, 2021, regarding the accommodation. *Id.* ¶ 10. She told Defendant Simons that she was pregnant and proposed alternative accommodations, including a proposal to work remotely. *Id.* ¶ 10. Plaintiff Baker's request to work remotely was denied because no such positions were available, and NWRESD was moving away from remote work as it transitioned to having students in person. *Id.* Ex. 3. Plaintiff Baker's unpaid leave began October 19, 2021, the same date the vaccine mandates went into effect. *Id.* ¶ 12.

On February 24, 2022, Defendant NWRESD offered Plaintiff Baker a transfer to a position at another facility, but Plaintiff declined. Simons Decl. ¶ 27; Baker Decl. Ex. 6. Plaintiff Baker went on family leave in March 2022, after which she briefly returned to work at NWRESD before resigning September 23, 2022. Simons Decl. ¶ 28; Baker Decl. ¶ 17.

E.    Janel Price

Plaintiff Price was already working remotely at the time she requested an exemption from the OHA Vaccine Mandate on September 22, 2021. Price Decl. ¶ 4, Ex. 1. On October 1, 2021, Defendant Simons sent Plaintiff Price a letter notifying her that her request for a religious exemption to the OHA Vaccine mandate was approved and that because no remote work or alternative assignment was available, the accommodation granted was unpaid administrative leave. *Id*. Ex. 2. Plaintiff Price met with Defendant Simons on October 4, 2021, to discuss the accommodation. *Id*. ¶ 10. Plaintiff Price informed Defendant Simons that she did not interact with children or families as part of her position, but was nevertheless told that she would not be allowed to work in person. *Id*.

On October 18, 2021, Plaintiff Baker met with her supervisor, Peggy Freund, and informed her that she had a medical reason precluding vaccination in addition to her religious one. *Id*. ¶ 13. Ms. Freund's "whole demeanor changed" and she encouraged Plaintiff Price to apply for a medical exception, commenting "'off the record' that she (Ms. Freund) shouldn't be saying this, but NWRESD's administration views medical vaccine exceptions as not being political and that she would fight for an accommodation" for her. *Id*.[2] Plaintiff Price's unpaid leave began October 18, 2021. *Id*. ¶ 12.

---

[2] Defendants object to the Court's consideration of this evidence on hearsay grounds, but for the reasons explained later in this opinion, the evidence is admissible as a statement of an opposing party.

On May 13, 2022, Defendant NWRESD recalled Plaintiff Price to her position, but she never responded. Simons Decl. ¶ 30-31, Ex. 21. After several attempts to reach her, NWRESD considered her position abandoned and terminated Plaintiff Price's employment effective June 30, 2022. *Id*. Ex. 22.

F.    Christina Lethrud

At the beginning of the 2021-2022 school year, Plaintiff Lethrud was working both in person and virtually. Lethrud Decl. ¶¶ 11, 13. Plaintiff's caseload at the time consisted of 11 students, only three of whom were in person. *Id*. ¶ 13. Prior to the effective date of the vaccine mandates, Plaintiff Lethrud was allowed to work in person so long as she complied with distancing, masking, testing, and other COVID-19 safety protocols. *Id*. ¶ 14.

On September 19, 2021, Plaintiff Lethrud requested a religious exemption from the OHA Vaccine Mandate. *Id*. Ex. 1. On October 1, 2021, Defendant Simons sent Plaintiff Lethrud a letter notifying her that her request for a religious exemption to the OHA Vaccine Mandate was approved and that because no remote work or alternative assignment was available, the accommodation granted was unpaid administrative leave. *Id*. Ex. 2. Plaintiff Lethrud met with Defendant Simons on October 7, 2021 to discuss her accommodation. *Id*. ¶ 15. She informed Defendant Simons that student observations could be performed "from a safe distance," or that she could switch with colleagues to work remotely. *Id*. ¶ 15. Plaintiff Lethrud's unpaid leave nevertheless went into effect on October 18, 2021, the same time as the vaccine mandates. *Id*. Ex. 3

On November 30, 2021, while on leave, Plaintiff Lethrud was employed by another school district. *Id*. ¶ 17. On May 16, 2022, Defendant NWRESD recalled Plaintiff Lethrud to her

position. *Id*. Ex. 5. After completing her work with the other school district, Plaintiff returned to

employment with NWRESD on July 18, 2022. *Id*. ¶ 19.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of " 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine

issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th

Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the

pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218

(9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v.

Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the

light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108,

1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the

existence of a material issue of fact implausible, that party must come forward with more

persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

**I.    Title VII Religious Discrimination Claims**

Plaintiffs' Counts I, II, III allege religious discrimination by Defendant NWRESD, asserting claims under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-2. Plaintiffs' claims include (A) disparate treatment; (B) failure to reasonably accommodate, and (C) disparate impact. The Court addresses each Title VII claim in turn.

**A.    Disparate Treatment (Count I)**

The *McDonnell Douglas* burden-shifting framework applies to Plaintiffs' disparate treatment discrimination claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). The establishment of a prima facie case creates a presumption of discrimination that the defendant can rebut by producing evidence of "a legitimate, nondiscriminatory reason" for the employment decision. *Id*. If the defendant does so, the presumption of discrimination no longer applies. *Id.* at 510-11. "[T]he burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).

**i.    Plaintiffs' prima facie case**

To establish a Title VII prima facie case of discrimination, a plaintiff must prove that "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." *Davis v. Team Elec. Co*., 520 F.3d 1080, 1089 (9th Cir. 2008). "The plaintiff in an employment discrimination action need produce very little evidence in order

to overcome an employer's motion for summary judgment." *Santillan v. USA Waste of California, Inc.*, 853 F.3d 1035, 1042–43 (9th Cir. 2017) (citation omitted). However, the evidence must "give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Defendants argue that Plaintiffs cannot establish that they suffered an adverse employment action or that similarly situated individuals outside their protected class were treated more favorably.

### a.    Adverse Employment Action

"The Ninth Circuit defines adverse employment actions broadly." *Shepard v. City of Portland*, 829 F. Supp. 2d 940, 960 (D. Or. 2011). In a discrimination case, an "adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of ... employment.'" *Davis*, 520 F.3d at 1089 (quoting *Chuang*, 225 F.3d at 1126).

Defendants argue that—as a matter of law—unpaid leave is not an adverse employment action but instead a reasonable accommodation, relying on the Supreme Court's statement that "[t]he direct effect of [unpaid leave] is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70–71 (1986) (quoting *Nashville Gas Co. v. Satty,* 434 U.S. 136, 145 (1977)). But the facts in *Ansonia* are distinguishable from those here. *Ansonia* involved an employer providing unpaid leave for employees to observe holy days. The Supreme Court explained that "[t]he provision of unpaid leave eliminates the conflict between employment requirements and religious practices by allowing the individual to observe fully religious holy days and requires him only to give up compensation for a day that he did not in fact work." *Ansonia*, 479 U.S. at 70.

Here, unlike in *Ansonia*, Plaintiffs were not deprived of pay for specific days required to

observe religious practices, but instead placed on indefinite unpaid leave. In these circumstances, *Ansonia* is not on point and it does not hold that placement on extended or indefinite unpaid leave is not an adverse employment action as a matter of law. Other courts in this circuit have found similarly. *See*, *e.g. Zimmerman v. PeaceHealth*, No. 3:22-CV-05960, 2023 WL 7413650, at *5 (W.D. Wash. Nov. 9, 2023) (rejecting a similar comparison to *Ansonia* on the basis that "*indefinite* unpaid leave does not so clearly eliminate the employment-religion conflict"); *Brown v. NW Permanente, P.C.*, No. 3:22-CV-986-SI, 2023 WL 6147178, at *6 (D. Or. Sept. 20, 2023) (distinguishing *Ansonia* and allowing "religious discrimination claims to treat unpaid leave as an adverse employment action").

For purposes of establishing a prima facie case, the Court finds that Plaintiffs' placement on indefinite leave satisfies Plaintiffs' minimal burden at this stage.

### b.    Disparate Treatment

To show disparate treatment, a plaintiff must show that "similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

Plaintiffs identify several other employees as being similarly situated and treated more favorably than them. Specifically, they offer evidence of another employee—Angela Fishback—who received a medical exemption from the vaccine mandates but, unlike Plaintiffs, was granted accommodations more favorable than indefinite unpaid leave. Fishback Decl., ECF 53. Like Plaintiff Lethrud, Ms. Fishback was a licensed speech-language pathologist employed by NWRESD, a position that Defendant Simons had determined required in person contact with students. *See id.* ¶ 2; Simons Decl. ¶ 19. However, unlike Plaintiffs, whose positions Defendant

Simons also concluded were student-facing, Defendants offered to allow Ms. Fishback to work remotely. Fishback Decl. ¶ 5. Later, because the administration of the school district to which Ms. Fishback was assigned "had no issue" with allowing her to work in person, the accommodation was revised to allow a combination of in person and remote work. *Id*. ¶¶ 6-9.

Defendants contend that Ms. Fishback was not similarly situated to Plaintiffs because she was "specifically requested" for in person work by the school district to which she was assigned, and also because Defendants understood that a large percentage of the students Ms. Fishback worked with were vaccinated. Def. Resp. 5, ECF 61. By contrast, Defendants argue, Plaintiffs' assigned workplaces did not request that they to be allowed to work in person, and the students with whom they worked were ineligible for vaccination.

An employer's reasons for why employees are not similarly situated are "generally analyze[d]…at the pretext stage of *Mcdonnell Douglas*, not the prima facie stage." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1159 (9th Cir. 2010). For purposes of these motions for summary judgment, Plaintiffs' evidence that another employee in a student-facing position and outside of Plaintiffs' protected class was granted a more favorable accommodation meets Plaintiffs' minimal burden of establishing that a similarly situated individual outside Plaintiffs' protected class was treated more favorably for purposes of their prima facie case.[3]

---

[3] Although Plaintiffs also present evidence of several other unvaccinated employees allowed to continue working in person, these employees are not outside Plaintiffs' protected class; like Plaintiffs, they were granted religious exemptions to the vaccine mandates and therefore do not show disparate treatment based on religion. ECF Nos. 48, 50-52. Nevertheless, evidence of a single comparator (Ms. Fishback) is sufficient to establish Plaintiffs' prima facie case. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (a plaintiff satisfies their prima facie burden by showing that "a similarly situated employee" outside of plaintiff's protected class was treated differently).

       ii.      Legitimate Nondiscriminatory Reason

Plaintiffs having carried their burden to make a prima facie case, the burden shifts to Defendants to introduce admissible evidence of a nondiscriminatory reason for placing Plaintiffs on indefinite unpaid leave.

Defendants first explain that Defendant Goldman's decision to impose the NWRESD Vaccine Mandate was motivated by a desire to protect student safety and health, noting that many students served by Defendant NWRESD "are severely disabled and/or medically fragile, and many are more vulnerable to death or severe injury from COVID-19 than a general student population would be." Goldman Decl. ¶¶ 2, 7.

Plaintiffs object to the admission of Defendant Goldman's testimony on the students' "medical fragility" and vulnerability to COVID-19 infection. Specifically, Plaintiffs object to admission of this evidence as "inadmissible opinion testimony by a lay witness" prohibited by Fed. R. Evid. 701(c). Pl. Joint Resp. 1, ECF 64. However, in the context of these motions, this testimony does not appear to be offered as an opinion on students' actual medical fragility, but rather Mr. Goldman's beliefs about the students' risk for the purpose of evaluating the reasons why he made the decisions he made. The Court therefore does not consider—and reserves ruling on—whether Mr. Goldman's statement is admissible to prove students' medical fragility. However, the statement is admissible on the issue of Mr. Goldman's beliefs about the students served by NWRESD as relevant to his decision to impose the NWRESD Vaccine Mandate. Considering that evidence, the Court finds that protecting students believed to be especially fragile or vulnerable to COVID-19 is a legitimate nondiscriminatory reason to prohibit unvaccinated employees from working in person with students.

Even if the Court were to exclude the evidence that Defendant Goldman believed the

students at issue to be "medically fragile," Defendants still provide a nondiscriminatory reason for imposing the NWRESD Vaccine Mandate. Defendant Goldman articulated these reasons without reference to any particular fragility of the students at issue:

> My goal throughout this period of time was to maintain student safety to the highest degree that I could. And we were prepared to do things beyond what the rule was going to say just like private companies did without having the same stipulations.

> So yes, our early learning centers were filled with kids who did not have access to a vaccine. There was no -- you know, no vaccine available to them at this point, I believe; and it was our goal to keep them as safe as possible, and so I am sure that we implemented a more stringent response than was minimally required by that rule.

Goldman Dep. 21:11-22.

Defendants have likewise articulated why they believed the particular action—placement on leave—was necessary under the circumstances. Defendant Simons testified that she reviewed Plaintiffs' job requirements, determined that they required student contact, and that no other positions or accommodations could be offered that would allow Plaintiffs to continue to work unvaccinated. Simons Decl. ¶¶ 8-31. This satisfies Defendants' burden at this step.

The only references in Plaintiffs' briefing to this step of the analysis cites evidence and argument on the issues of disparate treatment of allegedly similar employees or that the reason given was pretextual. *See* Pl. Reply 13-14, ECF 73. Those issues are not relevant to whether Defendants articulated a nondiscriminatory reason for their treatment of Plaintiffs. Accordingly, the Court finds that Defendants have carried their burden to articulate a legitimate nondiscriminatory reason for placing Plaintiffs on administrative leave.

### iii. Pretext

"[A] plaintiff can prove pretext in two ways: (1) *indirectly,* by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) *directly,* by showing that unlawful discrimination more likely

motivated the employer." *Noyes*, 488 F.3d at 1170 (citation omitted). If the evidence of pretext is circumstantial, it must be "specific" and "substantial." *Id.* Evidence relevant to establishing a plaintiff's prima facie case may also be relevant to establishing pretext (*i.e.*, discriminatory intent), but a plaintiff's burden is "much less at the prima facie stage than at the pretext stage." *Hawn*, 615 F.3d at 1158.

To establish this element, Plaintiffs offer evidence of one similarly situated employee—Ms. Fishback—who they argue was treated more favorably than Plaintiffs. As addressed above in the context of Plaintiffs' prima facie case, Defendants offer several reasons that Plaintiffs were treated differently than Ms. Fishback, who like Plaintiffs was in a position that Defendant Simons determined was student-facing yet was granted a more favorable accommodation than Plaintiffs. Specifically, Defendants argue that Ms. Fishback was treated differently because she was "specifically requested" for in person work by the district to which she was assigned, and because Defendants learned that a large percentage of the students Ms. Fishback worked with were vaccinated. Def. Resp. 5. But these reasons do not address why Ms. Fishback was initially granted the opportunity to work remotely when Plaintiffs were not, and do not explain why NWRESD could not communicate with Plaintiffs' assigned school districts to determine whether in person work with students would be permissible at those specific worksites. A jury, not the Court, must decide whether the differences between Ms. Fishback's situation and Plaintiffs' render them insufficiently similar such that Defendants' reasons for treating Plaintiffs differently was pretextual. *See Cortes v. Cnty. of Santa Clara*, 630 F. App'x 731, 732 (9th Cir. 2016) ("[W]hether two employees are similarly situated is ordinarily a question of fact") (citation omitted).

Plaintiffs have also produced direct evidence of discriminatory intent. Plaintiff Price

testified that, when she told her supervisor that she had a medical condition precluding vaccination, Ms. Freund commented "'off the record'…she (Ms. Freund) shouldn't be saying this, but NWRESD's administration views medical vaccine exceptions as not being political and that she would fight for an accommodation" for her. Price Decl. ¶ 13.

Defendants object to the admission of Ms. Freund's alleged comment on the grounds that the statement is hearsay prohibited by FRE 802. Plaintiffs respond that the statement is not hearsay because it is a statement by a "party's agent or employee on a matter within the scope of that relationship and while it existed." FRE 801(d)(2)(D). Defendants contend that FRE 801(d)(2)(D) does not apply because Ms. Freund "was not involved at all in the process of evaluating employees' applications for religious exceptions from the vaccine requirement, nor in the process of determining work assignments for employees, either vaccinated or unvaccinated." Def. Resp. 2.

The Court finds that Ms. Freund's statement is admissible under FRE 801(d)(2)(D). Defendant Simons' testimony contradicts Defendants' assertions as to Ms. Freund's role in Defendants' decision making in relation to granting exemptions and accommodations. Defendant Simons testified that she spoke with Plaintiffs' supervisors while making these decisions and that Ms. Freund provided an opinion on the issue of Ms. Price's accommodation. Simons Decl.. ¶ 8; Simons Dep. II 44:1-17, ECF 74-1. Based on the record before the Court, Ms. Freund was an employee of Defendant NWRESD making a statement within the scope of her employment, and the statement is therefore not hearsay under FRE 801(d)(2)(D).

When the Court considers Ms. Freund's statement, particularly in light of the evidence of Defendants' alleged disparate treatment of Ms. Fishback, a jury could conclude that Defendants' proffered nondiscriminatory reason for their treatment of Plaintiffs was pretextual and that they

acted with discriminatory intent. For that reason, Defendants' motion must be denied.

However, Plaintiffs are not entitled to summary judgment, either. Based on the job descriptions set forth in the background section of this opinion, there is evidence that the essential functions of Plaintiffs' jobs required some in person work and that alternative positions and remote work were not possible. There is also evidence that Ms. Fishback was not similarly situated. Viewing that evidence in the light most favorable to Defendant, genuine issues of fact remain that preclude summary judgment in Plaintiffs' favor. Thus, the Court denies both parties' motions for summary judgment on this claim.

### B.    Failure to Reasonably Accommodate (Count II)

To establish religious discrimination on the basis of a failure to accommodate theory, a plaintiff must set forth a prima facie case that (1) they had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) they informed the employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected them to an adverse employment action because of their inability to fulfill the job requirement. *See Peterson.*, 358 F.3d at 606. Once the prima facie case is established, the burden then shifts to the defendant to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Peterson,* 358 F.3d at 606 (citations omitted); *see also EEOC v. Townley Eng'g & Mfg. Co.,* 859 F.2d 610, 615 (9th Cir.1988) ("burden of attempting an accommodation rests with the employer rather than the employee"). The parties do not appear to dispute the prima facie elements of the claim, but instead dispute whether placing Plaintiffs on administrative leave was a reasonable accommodation and whether granting other accommodations would constitute an undue hardship.

       i.      Unpaid Leave as a Reasonable Accommodation

An employer is not obligated to "choose any particular reasonable accommodation," but only to offer "any reasonable accommodation." *Ansonia*, 479 U.S. at 68. The inquiry therefore ends when an employer reasonably accommodates the employees' religious needs, and "the extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship." *Id.* at 68–69. A reasonable accommodation is one which "eliminates the conflict between employment requirements and religious practices." *Id.* at 70.

Defendants argue that the Supreme Court in *Ansonia* "specifically blessed unpaid leave as a reasonable accommodation for a religious conflict such as the one at issue here" because Plaintiffs' objection to the accommodation itself—as opposed to the vaccine—is not religious, but secular. Def. Mot. 15, ECF 55. The Court has already addressed the corollary of this argument in the context of Plaintiffs' disparate treatment claim and found *Ansonia* distinguishable. As explained above, a question of fact remains on whether placing Plaintiffs on indefinite unpaid leave is an adverse employment action or a reasonable accommodation. There is no reason to depart from this rationale for purposes of this claim.

Plaintiffs argue that unpaid leave is a per se unreasonable accommodation. Plaintiffs' argument rests the Seventh Circuit's decision in *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013). There, an employee requested unpaid leave to comply with a religious duty to attend a burial. *Id*. at 450. That leave was not granted, and the plaintiff was terminated after he took the leave anyway in violation of the employer's attendance policy. *Id*. 545. The defendant-employer argued that it offered a reasonable accommodation in the form of "a voluntary self-termination" through the employee's violation of the attendance policy to attend

the burial "with the possibility of being rehired." *Id*. at 456. The court held that "an option of voluntary termination with the right to ask for one's old job later is not a reasonable accommodation." *Id*.

But the facts and holding in *Adeyeye* do not suggest that unpaid leave is a per se unreasonable accommodation. In fact, as noted above, the plaintiff in *Adeyeye requested* unpaid leave as a reasonable accommodation. The "accommodation" at issue in that case was termination, not unpaid leave. Plaintiffs have cited no case law which stands for the proposition that unpaid leave is a per se unreasonable accommodation.

Plaintiffs also argue that unpaid leave is an unreasonable accommodation as a matter of law because it violated the OHA Vaccine Mandate or that the NWRESD Vaccine Mandate was preempted by the OHA Vaccine Mandate. Neither theory is availing. The OHA Vaccine Mandate cannot be read to require that individuals granted a religious exemption must be allowed to continue in their positions in the exact same way they would if vaccinated. Rather, the rule provided that schools granting religious exceptions must "take reasonable steps to ensure that unvaccinated teachers, school staff and volunteers, and school-based program staff and volunteers are protected from contracting and spreading COVID-19."  OAR 333-019-1030(5). Neither did the rule preclude employers from imposing more restrictive requirements. OAR 333-019-1030(13) ("[n]othing in this rule is intended to prohibit schools or school-based programs from…[h]aving more restrictive or additional requirements"). Accordingly, the existence of the OHA Vaccine Mandate and its relationship to the NWRESD Vaccine Mandate does not provide a basis to find Defendants' accommodation unreasonable as a matter of law.[4]

---

[4] Plaintiffs provide several other arguments on the issue of reasonable accommodation which are not relevant to the Court's analysis of this claim, including violation of collective bargaining

As in the context of Plaintiffs' disparate treatment claim, whether placement on administrative leave was an adverse employment action or a reasonable accommodation is a question of fact for the jury to decide.

        ii.     Undue Hardship

Because there is a question of fact on whether unpaid administrative leave was a reasonable accommodation, neither parties' motion can succeed unless there is no genuine issue of fact that Plaintiffs' proposed accommodations would (or would not) have imposed an undue hardship on Defendants. Whether an accommodation constitutes an undue hardship is a "fact-specific inquiry" that "is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 143 S. Ct. 2279, 2281 (2023).

Defendants first argue that "given the population of students served by NWRESD, and the potential impact on other staff members, allowing the unvaccinated plaintiffs to work in person certainly would have represented an undue hardship." Def. Mot. 17. In support of their motion, Defendants cite a case outside this circuit which found, on a motion to dismiss, that allowing an unvaccinated special education teacher to work in person with students would present an undue hardship to her employer in light of the safety risk to students. *Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265(DLI)(VMS), 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023). But even if the Court agreed with the conclusion in *Beickert*, the facts are not analogous. Here, unlike there, Plaintiffs have produced evidence that other individuals *were* allowed to work in person. *See* ECF Nos. 48, 50, 52, Fishback Decl. ¶ 8. Viewing the evidence in the light most favorable to Plaintiffs, a jury could conclude from the fact that in person work was

---

agreements and Oregon sick-leave statues. This is not a breach of contract claim nor a claim for violation of Oregon's Sick Leave Act.

allowed for other student-facing employees that it would not have been an undue hardship to allow Plaintiffs to do so as well.

Second, Defendants argue that it would have imposed an undue hardship to allow Plaintiffs to work remotely because the Plaintiffs' job descriptions required in person work and there were no remote positions available. Def. Resp. 18-19. In particular, Defendants argue that allowing remote work would increase staffing costs. But again, there is evidence in the record that others whose job descriptions required in person work *were* given the opportunity to work remotely, providing evidence from which a jury could conclude that it would not have been an undue hardship to allow the same for Plaintiffs. *See* ECF 49; Fishback Decl. ¶ 5. In addition, Plaintiffs' declarations contain evidence regarding the practical realities of their positions and the ability to carry them out remotely, which is in conflict with Defendants' evidence on the issue. A jury, not the Court, must resolve this conflict. Accordingly, there is a question of fact on whether allowing Plaintiffs to work in person or remotely would have imposed an undue hardship on Defendants, and they are not entitled to summary judgment on this claim.

However, Plaintiffs are not entitled to summary judgment, either. At oral argument and in the briefing on the motions, Plaintiffs argue that they are entitled to summary judgment because there is no scientific evidence in the record that unvaccinated people pose a greater risk to students than vaccinated ones. They note that Defendants have admitted that COVID-19 vaccines do not prevent transmission. *See* Renner Decl. Ex. 11 at 5. But the statement that vaccinated individuals can also spread COVID-19 says nothing about the *comparative* risk of vaccinated versus unvaccinated individuals spreading the virus. That admission therefore does not provide a basis to grant Plaintiffs' motion.

Because genuine issues of fact remain, neither party is entitled to summary judgment on

this claim.

C.    Disparate Impact (Count III)

Defendants also move for summary judgment on Plaintiffs' disparate impact claim. To succeed on a Title VII disparate impact claim, Plaintiffs must show that "a facially neutral employment practice has a significantly discriminatory impact upon a group protected by Title VII." *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021), (quoting *Paige v. California*, 291 F.3d 1141, 1144 (9th Cir. 2002)). Such a showing requires that Plaintiffs demonstrate "1) a specific employment practice that 2) causes a significant discriminatory impact." *Id*. Plaintiffs must also establish that "the challenged practice is either (a) not job related or (b) '[in]consistent with business necessity.'" *Id*. (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i) (2018)). Defendants here argue that Plaintiffs cannot establish that they are a group protected by Title VII, and cannot show that the challenged practice is not job related.

Defendants first argue that Plaintiffs cannot identify a specific group protected by Title VII. In particular, Defendants argue that Plaintiffs' "group" is not protected because it is not comprised of religious employees as a whole, but is instead made up of individuals with specific beliefs regarding the COVID-19 vaccine. Plaintiffs respond by arguing that the protected group is "employees who refused the vaccine for religious reasons," and that the Court need not "further analyze and parse this identifiable group." Pl. Joint Resp. 27-28.

Defendants rely on several district court cases which have addressed similar factual scenarios involving disparate impact claims by subgroups of religious individuals. Most significantly, in another case involving a vaccine mandate, the U.S. District Court for the Central District of California recently addressed an argument by a plaintiff that "his disparate impact claim encompasses all those who share a religious belief against vaccinations." *Dunbar v. Walt*

*Disney Co.*, No. CV 22-1075-DMG (JCX), 2022 WL 18357775, at *3 (C.D. Cal. July 25, 2022). As the court noted there, "courts generally treat disparate impact claims as those affecting particular groups or faiths, including articulable subgroups, but not all those who share a single common belief." *Id*. That court adopted the reasoning of several other district courts which explained that allowing disparate impact claims for groups holding a particular religious belief would give "limitless relief" because "any policy impacting a plaintiff's specific religious belief would generally impact 100% of the members of a class defined by that belief, which would virtually always amount to a disproportionate impact as compared to those falling outside the class." *Id*. (quoting *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1306 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021)); *see also Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179, 1186 (W.D. Wash. 2002) (addressing a similar issue and coming to the same conclusion).

The Court agrees with and adopts the reasoning *Dunbar* and the other cases it cites. In fact, this Court has already recently cited *Dunbar* for the proposition that a plaintiff asserting a disparate impact claim must, at summary judgment, "identify a specific protected group not simply 'religious' employees who were adversely affected by Defendant's policies." *Vasilenko v. City of Portland*, No. 3:22-CV-01203-JR, 2023 WL 3455639, at *1 (D. Or. May 14, 2023) (citing *Dunbar*, 2022 WL 1857775, at *3). Plaintiffs claim that this interpretation renders Title VII a "dead letter." Pl. Joint Resp. 27. However, as *Dunbar* points out, disparate impact claims *can* be made by specific religious faiths or groups. But parties cannot establish a prima facie disparate impact claim by defining the group as comprised of religious individuals holding a particular belief they attribute to their religion even if other members of that individual's faith or religious group believe otherwise. *Dunbar*, 2022 WL 1857775, at *3. By contrast, Plaintiffs'

interpretation of what constitutes a Title VII-protected group would give disparate impact claims an almost limitless reach for the reasons explained in *Dunbar*.

Because Plaintiffs have not identified a protected group, but rather simply the subgroup of religious individuals affected by the vaccine mandates, there are no facts in the record from which a jury could find that the vaccine mandates resulted in a disparate impact on a group protected by Title VII. This disposes of this claim and the Court therefore does not address Defendants' second argument on whether the challenged practice is job related and consistent with a business necessity. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' disparate impact claim.

## IV.    State Law Claims (Count IV)

Plaintiffs Cox and Durkee assert state law claims against Defendant NWRESD under (1) Or. Rev. Stat. § ("ORS") 659A.030 for religious discrimination; and (2) ORS 659A.033 for Defendants' "fail[ure] to offer the use of paid leave." Sec. Am. Compl. ¶ 163, ECF 24. Defendant NWRESD moves for summary judgment in its favor on these claims.

Plaintiffs' claims under 659A.030 are analyzed the same as their analogous Title VII claims. *Tsur v. Intel Corp.*, 648 F. Supp. 3d 1292, 1311 (D. Or. 2022) ("it is well-established that ORS § 659A generally mirrors the federal statutory regime under Title VII and that federal law provides guidance for interpreting Oregon's antidiscrimination law"). Thus, for the same reasons addressed above in the context of Plaintiffs' disparate treatment claim, Defendants' motion for summary judgment on Plaintiffs' 659A.030 claim is denied.

Defendants have also moved for summary judgment in their favor on Plaintiffs' ORS 659A.033 claim. An employer violates that statute if it "does not allow an employee to use vacation leave, or other leave available to the employee, for the purpose of allowing the

employee to engage in the religious observance or practices of the employee," and "[r]easonably accommodating use of the leave by the employee will not impose an undue hardship on the operation of the business." ORS 659A.033(1). However, this requirement only applies to "leave that is not restricted as to the manner in which the leave may be used and that the employer allows the employee to take by adjusting or altering the work schedule or assignment of the employee." *Id.* Defendants contend that the statute does not apply here because (1) Plaintiffs cannot show they were prevented from using the leave to engage in a religious observance or practice and (2) because the leave at issue was restricted as to how it could be used.

First, Defendants argue that ORS 659A.033 also does not apply because Plaintiffs do not seek to use their leave to "engage in the religious observance or practices of the employee." ORS 659A.033(2)(a). In particular, Defendants argue that using leave *not* to work is not using it to "engage" in any religious observance. They argue that the statute was "clearly designed" to allow employees to engage in specific activities corresponding to their religion (*e.g.*, observing the Sabbath). Plaintiffs argue that their "religious abstinence" from the vaccine constitutes a religious practice or observance to which the statute applies.

While it is certainly true that an act of abstinence can constitute a religious practice (indeed, observing the Sabbath is a religious practice that involves abstinence from working), Plaintiffs' leave here was not taken in order to engage in a religious practice. Instead, it was a *consequence* of a religious observance. That consequence was not a foregone conclusion, but rather the result of Defendants' decision making regarding the nature of Plaintiffs' positions and the availability of other accommodations. In other words, Plaintiffs' placement on leave was several steps removed from their decision to abstain from vaccination. The plain language of the statute cannot be read to apply in this circumstance.

Because the Court finds that Plaintiffs cannot show that they were engaged in a religious observance or practice, ORS 659A.033 does not apply. The Court therefore does not reach Defendants' second argument on this issue and finds that Defendants are entitled to summary judgment on Plaintiffs' ORS 659A.033 claim.

**V.      Due Process (Count V)**

The parties cross-move for summary judgment on Plaintiffs' claim for violation of their right to procedural due process under the Fourteenth Amendment. The Fourteenth Amendment protects individuals from the deprivation of liberty or property by the government without due process. To prove a violation of procedural due process, a plaintiff must show (1) deprivation of a protected liberty or property interest and (2) denial of adequate procedural protections. *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001) (citation omitted).

A.      Deprivation of Protected Interest

Plaintiffs assert three allegedly protected interests: (i) the right to continued gainful employment; (ii) the right to religious liberty, *freely exercised*, and (iii) the right to work *in person* under the OHA vaccine rule." Pl. Mot. 69 (emphasis in original), ECF 39. Defendants do not appear to contest that Plaintiffs had a protected property interest in continued employment, but otherwise contest Plaintiffs' asserted interests.

i.      Right to religious liberty

Plaintiffs' asserted right to free exercise is a liberty interest explicitly protected by the First Amendment. Whether there is a question of fact as to Plaintiffs' deprivation of this right is addressed below with respect to Plaintiffs' separate free exercise claim. For the same reason the Court denies both parties' motions for summary judgment on that claim, it finds that there is a

question of fact on whether Plaintiffs have been deprived of their liberty interest in the free exercise of their religion.

ii.    Right to work in person under the OHA Vaccine Rule

Plaintiffs cannot establish a property interest in the right to work in person under the OHA Vaccine Mandate. "Protected property interests are not created by the Constitution, but by 'existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 985 (9th Cir. 2011) (quoting *Thornton v. City of St. Helens,* 425 F.3d 1158, 1164 (9th Cir.2005). Plaintiffs contend that the OHA Vaccine Mandate granted them a protected property interest in the right to work in person, but that is not what the OHA Vaccine Mandate provides. While it does allow exceptions for medical or religious reasons, it also obligates schools granting such exceptions to "take reasonable steps to ensure that unvaccinated school-based program staff and volunteers are protected from contracting and spreading COVID-19." OAR 333-019-1030(5). Moreover, it allows schools and school-based programs to impose more restrictive or additional requirements. OAR 333-019-1030(13). Nowhere in the OHA Vaccine Mandate does it provide that individuals who obtain a vaccine mandate exemption must be permitted to continue working in person if they were working in person prior to implementation of the mandate. In other words, the OHA Vaccine Mandate does not create a property interest in Plaintiffs' continued ability to work in person with students when granted a religious exemption.

B.    Denial of Adequate Process

Because Defendants do not dispute Plaintiffs' interest in and deprivation of continued employment, the Court proceeds to whether there is a genuine issue of fact on Plaintiffs' alleged

denial of due process before being placed on indefinite unpaid leave. Courts balance three factors to determine whether a government action violates procedural due process: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

As to the second element, Plaintiffs argue that the process due was "a formal policy, articulated in writing and approved by the majority vote of the governing body at a public meeting, at which employees affected by the proposed policy may be heard in a meaningful context." Pl. Mot. 69. Plaintiffs explain that this claim depends on two issues: "whether superintendent Goldman had the requisite authority to impose a vaccination requirement by administrative fiat, and if so, whether his conduct satisfied the constitutional requirements of due process." Pl. Reply 21.

Plaintiffs' argument is not premised on Defendants' decision to place them on administrative leave but instead on the policy (the NWRESD Vaccine Mandate) that ultimately led to that decision. But the procedural due process analysis depends on whether "a government action" violates due process. The action at issue in allegedly depriving these Plaintiffs of their right to continued employment is the decision to impose unpaid leave, not the larger imposition of the NWRESD Vaccine Mandate. The latter does not itself deprive Plaintiffs of their right to continued employment because there are circumstances under which Plaintiffs may have been allowed to continue working. In other words, it was that plaintiff-specific decisions—(1) that these particular Plaintiffs were required to work in person with students based on their job duties

and (2) that there were no remote or other positions available—that deprived them of their

employment. Plaintiffs have provided no case law to support the concept that the imposition or

creation of an employment policy that ultimately leads—through additional decision making

about the application of that policy to individual employees—can be the basis of a procedural

due process claim.

Even if the Court accepted Plaintiffs' theory of due process, the uncontroverted record

shows that Defendant Goldman did have the authority to impose the NWRESD Vaccine

Mandate. Defendant Goldman, according to NWRESD policy, had the following authority:

> As chief executive officer, designated by the Board, the superintendent shall have
> the authority and responsibility to administer the Northwest Regional Education
> Service District (NWRESD) except where the law designates that responsibility to
> others. The superintendent may issue regulations, consistent with state statute and
> policies of the Board, which shall be binding on the employees and students of the
> NWRESD. The superintendent is responsible, under the Board's direction, for
> general supervision of all NWRESD programs, services and personnel. The
> superintendent shall have the responsibility and authority to maintain and update
> position titles/job descriptions.

Mersereau Decl. II Ex. 8, ECF 77. The above statement is broad and cannot be read to exclude

the COVID-19 decisions Defendant Goldman made here. Plaintiffs have identified no evidence

that COVID-19-related policy was somehow excepted from the above grant of authority, nor

have they provided any evidence that the NWRESD Board tried to constrain Defendant

Goldman's decision making in this area. Plaintiffs are not entitled to summary judgment.

Turning to Defendants' motion, they argue that Plaintiffs' right to due process was

satisfied by meeting with Defendant Simons or another human resources employee or supervisor

before the imposition of the unpaid leave and the availability of grievance procedures. Plaintiffs'

arguments in opposition to Defendants' motion again focus on the above issues regarding the

imposition of the policy, and not on the process directly related to their placement on leave. That

argument fails for the same reasons discussed above. There is no evidence from which a jury could conclude that Plaintiffs did not receive adequate due process related to the specific decisions to place them on unpaid leave. Because there is evidence that Plaintiffs were given notice of the employment decision, had the opportunity to contest it, and had grievance procedures available to them, Defendants are entitled to summary judgment on this claim.

## VI.     First Amendment (Count VI)

The parties cross-move for summary judgment on Plaintiffs' claim for violation of the Free Exercise Clause of the First Amendment. Plaintiffs allege that Defendants' decision to grant their requests for a religious exemption to the vaccination requirement but provide only unpaid leave infringed on their right to freely exercise their religion. Sec. Am. Compl. ¶¶ 181-189. The parties dispute whether strict scrutiny or rational basis review applies to this claim, which turns on whether the NWRESD Vaccine Mandate is a neutral, generally applicable governmental regulation.

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law ... prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1876 (2021). A neutral and generally applicable law or policy that incidentally burdens religious exercise is subject to rational basis scrutiny. *Id.* A law or policy that is not neutral and generally applicable is subject to strict scrutiny. *Id.* "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* at 1877. "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Id.*

(cleaned up). If the exemptions to a law are granted at the sole discretion of a government agency or official, the law is not generally applicable. *See id.* at 1878.

Defendants assert that "NWRESD's policy of not placing unvaccinated staff back to work with its own students for a several-month period was a policy of general applicability; it applied to all employees." Def. Mot. 29 (citing Goldman Decl. ¶ 6). Defendant Goldman states that during the pandemic, he "decided that following the October 18, 2021 [OHA Vaccine Mandate] deadline, NWRESD would not place unvaccinated staff in positions that required direct contact with its students." Goldman Decl. ¶ 6. He explains that this policy was more restrictive than the OHA's vaccination policy. *Id.* ¶¶ 4-6. Plaintiffs counter that the OHA Vaccine Mandate is not neutral and generally applicable because it provided a mechanism for individualized exemptions. It is undisputed that the OHA Vaccine Mandate allowed for medical and religious exemptions to the vaccination requirement. Goldman Decl. ¶ 4. But Defendants' stricter policy of not placing unvaccinated staff in positions that required direct contact with students *is* facially neutral and generally applicable, and it was under this policy that Plaintiffs were placed on unpaid leave.

However, there is evidence that the NWRESD Vaccine Mandate may not have been neutral and generally applicable *as applied*. As addressed earlier in this opinion, Plaintiffs provide evidence that an individual who received a medical exemption was given permission to work remotely and then to work in person with high school students. This evidence undermines Defendants' assertion that they consistently adhered to a policy that unvaccinated staff could not work directly with students, and suggests that individualized discretion applied. A jury could also conclude that the policy was not neutral as applied because it favored those with medical exemptions over those with religious exemptions. While Defendants' policy was generally

applicable on its face, in the light most favorable to Plaintiffs, it was not generally applicable as applied. Thus, for the purposes of Defendants' motion, the Court cannot grant the motion unless the NWRESD Vaccine Mandate can survive strict scrutiny.

"A government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton*, 593 U.S. at 1881. The Supreme Court has held that "[s]temming the spread of COVID–19 is unquestionably a compelling interest[.]" *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020). The Court therefore considers whether Defendants' policy was narrowly tailored to achieve that goal. Plaintiffs argue that the policy was not narrowly tailored because vaccinated individuals can also spread COVID-19 to others. They also point to earlier, less strict vaccination policies "that were put to good use prior to October 18, 2021, and throughout the pandemic to keep everyone reasonably safe at work." Pl. Mot. 70.  The Court has already concluded that genuine disputes remain on the issue of risks posed by allowing Plaintiffs to continue to work in person. Defendants are not entitled to summary judgment on Plaintiffs' free exercise claim because in the light most favorable to Plaintiffs, strict scrutiny applies, and the vaccination policy fails strict scrutiny.

Plaintiffs are not entitled to summary judgment either. Even if strict scrutiny applies, the record can reasonably support a finding that the policy was narrowly tailored. And in the light most favorable to Defendants, rational basis review applies. As addressed above, there is evidence in the record from which a jury could conclude that the individual with the medical exemption who was allowed to work with students was not similarly situated to Plaintiffs, and thus that Defendants' policy was neutral and generally applicable as applied. If rational basis review applies, the policy need only be rationally related to a legitimate government purpose.

*Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015). The policy easily meets that standard. In sum, neither side is entitled to summary judgment on Plaintiffs' free exercise claim.

## VII.    Qualified Immunity for Defendants Goldman and Simons

Defendants Simons and Goldman argue that they are entitled to qualified immunity on Plaintiffs' due process and free exercise claims. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted). "To determine whether [an officer] violated clearly established law, we look to cases relevant to the situation [the officer] confronted, mindful that there need not be a case directly on point." *A.K.H. rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016) (internal quotation marks and citation omitted). And while there need not be a case directly on point, "existing precedent must place the lawfulness of the particular [action] beyond debate," for which "a body of relevant case law is usually necessary." *City of Escondido v. Emmons*, 139 S. Ct. 500, 504, (2019) (internal quotation marks and citation omitted). The facts are to be viewed in the light most favorable to the nonmoving party in determining whether qualified immunity applies. *Tuuamalemalo v. Greene*, 946 F.3d 471, 476 (9th Cir. 2019).

Defendants argue that the rights at issue were not clearly established in the fall of 2021, when the alleged constitutional violations occurred. Def. Mot. 30. They cite a recent case in which another court in this district found "no precedent where a court found that a government official was liable for a vaccination mandate or any COVID-19 mitigation measures. In fact, courts have consistently held the opposite." *Id.* (citing *Penna v. N. Clackamas Sch. Dist.*, No. 3:22-CV-01417-YY, 2023 WL 6003834, at *4 (D. Or. Aug. 11, 2023), *report and*

*recommendation adopted as modified*, No. 3:22-CV-01417-YY, 2023 WL 6850268 (D. Or. Oct. 17, 2023)).

Plaintiffs counter that Defendants Goldman and Simons were not performing discretionary functions, so qualified immunity is inapplicable. Qualified immunity applies to discretionary acts, not ministerial acts. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). Plaintiffs assert that Defendant Simons had no discretion in granting of religious exemptions to the vaccine mandates. And they assert that Defendant Goldman had no discretion because he was also bound by the OHA Vaccine Mandate. They argue that Defendant Goldman was only supposed to ensure implementation of the OHA Vaccine Mandate, but instead he imposed a different policy that "knowingly erased the rights of religious employees with documented exceptions granted under the OHA vaccine rule." Plaintiffs are incorrect. Defendant Simons had discretion to grant different types of accommodations to requests for exemptions, and there is evidence that Defendant Goldman had discretion to set COVID-19 related policy in the District. Mersereau Decl. Ex. 8. Thus, qualified immunity may apply to their conduct.

Plaintiffs cite no factually analogous cases showing that the applicable law was clearly established. They merely assert that "workplace discrimination in violation of Title VII has long been held to be contrary to a clearly established right." Pl. Resp. 34 (citing *Bator v. Hawaii*, 39 F.3d 1021, 1028 (9th Cir. 1994)). *Bator* involved discrimination on the basis of sex and is not factually similar. The Supreme Court has repeatedly emphasized that courts may not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations omitted). Plaintiffs attempt to do exactly that. The correct question here is whether it was clearly established that instituting a policy providing for no in person contact with students for staff who were unvaccinated during a pandemic was clearly established as a

violation of constitutional rights. Other courts in this district have found that qualified immunity applies under similar circumstances. *Trusov v. Oregon Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251, at *10 (D. Or. Sept. 20, 2023); *MacDonald v. Oregon Health & Sci. Univ.*, No. 3:22-CV-01942-IM, 2023 WL 5529959, at *9-*10 (D. Or. Aug. 28, 2023). This Court has located no cases that would have put Defendants on notice that their conduct was unconstitutional. Because the rights Plaintiffs assert were not clearly established when they were allegedly violated, Defendants Goldman and Simons are entitled to qualified immunity.

**VIII.    Timeliness of Plaintiff Lethrud's Title VII Claims**

Defendants argue that Plaintiff Lethrud's Title VII claims are untimely because she failed to file an administrative claim with the EEOC or BOLI within 300 days of the alleged unlawful employment practice. Def. Mot. 22-23. The parties agree that Plaintiff Lethrud's charge of unlawful discrimination must be filed "within three hundred days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1); Def. Mot. 22; Pl. Lethrud Resp. 6, ECF 69.

Defendants state that Plaintiff Lethrud was placed on unpaid leave on October 19, 2021. Def. Mot. 23 (citing Simons Decl. ¶ 19, Ex. 10). They point out that Plaintiff Lethrud filed her formal complaint with the EEOC on October 11, 2022, more than 300 days later. *Id.* (citing Mersereau Decl. I Ex. 7, ECF 58). The EEOC closed Plaintiff Lethrud's case and issued a right-to-sue letter because the complaint was untimely. Mersereau Decl. I Ex. 8.

Plaintiff Lethrud argues that her EEOC charge was timely as of July 15, 2022. Pl. Lethrud Resp. 8. She states that on July 12, 2022, an EEOC representative contacted her for more information about her charge. *Id.* (citing Lethrud Decl. Ex. 6 at 10). Plaintiff Lethrud responded on July 15, 2022. *Id.* (citing Lethrud Decl. Ex. 6 at 12-14). She asserts that her

response to the representative constituted a charge under the applicable regulations. *Id.* (citing 29 C.F.R. § 1601.12(b)).

> The regulations provide:

> [A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b). *See also McWilliams v. Latah Sanitation, Inc.*, 149 F. App'x 588, 590 (9th Cir. 2005) ("Under this provision, a complainant who files an unsigned or unsworn charge can amend the charge by providing a supplemental verification and that amendment relates back to the original charge so as to satisfy the 'oath or affirmation' requirement."). In the context of a discrimination claim under the Age Discrimination in Employment Act, the Supreme Court has held that an intake questionnaire submitted to the EEOC can constitute a charge under the applicable regulations if it contains allegations and the name of the charged party and can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). Many courts have applied this standard to Title VII claims. *Kennedy v. Columbus Mfg., Inc.*, No. 17-CV-03379-EMC, 2017 WL 4680079, at *3 (N.D. Cal. Oct. 18, 2017) (collecting cases).

Plaintiff Lethrud's July 15, 2022, email to the EEOC representative included most, but not all, of the information sufficient to make a sufficient charge under the regulations. Lethrud Decl. Ex. 6 at 12-15. The representative notified Plaintiff that she could not open an attachment with Defendants' response to Plaintiff's request for a religious exemption. *Id.* at 16. Plaintiff

resent the attachment on July 22, 2022, and included a description in the body of the email. *Id.* at 24. She also stated, "My main complaint is they should have been able to accommodate me last October 2021 there was no reason to put me on unpaid leave. I lost a lot of $ and had to go bankrupts and was at risk of my child and m self [sic] of being evicted." *Id.* This email supplied the missing information and was a request for the EEOC to act. The representative responded on July 25, 2022, that she had drafted a charge for Plaintiff. *Id.* at 27.

The regulations also provide that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. A charge is verified if it is "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." *Id.* § 1601.3(a). Plaintiff Lethrud provides no evidence that she affirmed the contents of her emails to the EEOC representative before a notary or attached a declaration under penalty of perjury. The evidence shows that Plaintiff Lethrud submitted unverified email responses and attachments. Lethrud Decl. Ex. 6 at 10-28.

In the light most favorable to Plaintiff, her emails to the EEOC representative, although unverified, constituted a sufficient charge as of July 22, 2022. They contained the necessary information and asked the EEOC to act. The signing of the formal charge in October 2022, which addressed the same underlying complaints and was based on the same facts, was an amendment to cure a technical defect, and it related back to the original date of filing. Because Plaintiff's charge was filed on July 22, 2022, fewer than 300 days before she was placed on unpaid leave, it was timely, and Defendants' motion for summary judgment on Plaintiff Lethrud's claims is denied.

///

**CONCLUSION**

Plaintiffs' Joint Motion for Partial Summary Judgment [39] is DENIED. Defendants'

Motion for Summary Judgment [55] is GRANTED in part and DENIED in part. Defendants

are entitled to summary judgment on Plaintiffs' Count III, the portion of Count IV which

relies on ORS 659A.033, and Count V. Defendants Goldman and Simons are entitled to

summary judgment on the claims against them based on qualified immunity. Defendants'

motion is otherwise denied.

IT IS SO ORDERED.


DATED:   February 23, 2024        .



MARCO A. HERNÁNDEZ
United States District Judge