IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA MARIE COX, an individual,

                Plaintiff,

v.

NORTHWEST REGIONAL EDUCATION SERVICE DISTRICT, a political subdivision of the STATE OF OREGON and public body corporate,

                Defendant.

Case No. 3:22-cv-01073–HZ (Lead Case)
Case No. 3:22-cv-1894-HZ (Trailing Case)

OPINION & ORDER

Tyler D. Smith
Tyler D. Smith, P.C.
181 N. Grant Street, Suite 212
Canby, OR 97013

    Attorney for Plaintiffs

Brett Mersereau
The Law Office of Brett Mersereau
2100 NE Broadway, #119
Portland, OR 97232

    Attorney for Defendant

HERNÁNDEZ, Senior District Judge:

Plaintiffs Jessica Cox, Judi Durkee, Christina Lethrud, Carrie Erlandson, Katey Baker, and Janel Price brought this religious discrimination suit against Defendant Northwest Regional Education Service District ("NWRESD"). On June 3, 2024, the Court held a four-day jury trial on Plaintiffs' disparate treatment and reasonable accommodation claims under Title VII and Plaintiffs Cox and Durkee's disparate treatment claims under state law. The Court dismissed all of Plaintiffs' disparate treatment claims, Minutes, ECF 110, and the jury found for Plaintiffs on their reasonable accommodation claims, awarding Plaintiff Cox $200,000 and Plaintiffs Durkee, Lethrud, Erlandson, Baker, and Price $150,000 in noneconomic damages. After supplemental briefing from the parties, the Court now awards each Plaintiff economic damages as described below.

## DISCUSSION

### I. Net vs. Gross Pay

The parties dispute whether Plaintiffs' damages award should be net or gross pay. Defendant specifically argues that "gross pay" would result in a windfall to Plaintiffs because "had they remained employed, they would have been subject to . . . . deductions," such as union dues and optional insurance benefits. Def. Memo. 2.

The Court disagrees. "[B]ack-pay awards are taxable . . . . [a]nd a lump-sum award will sometimes push a plaintiff into a higher tax bracket than he would have occupied had he received his pay incrementally over several years." *Clemens v. Centurylink, Inc.*, 874 F.3d 1113, 1116 (9th Cir. 2017). Were the Court to award Plaintiffs the net "direct deposit" amounts, as Defendant requests, Plaintiffs would be subject to a double tax on this income. While Defendant has correctly noted that Plaintiffs will not have to pay certain fees, such as union dues, out of

their damages award, it is very likely that they will pay higher taxes on the award than they would have if received as wages over time. In other words, the sum total Plaintiffs receive may be lower than the sum total they would have received as employees. Thus, an award of gross wages is more likely to make Plaintiffs whole. Accordingly, the Court will award Plaintiffs their gross income.

## II.    Prejudgment Interest

The parties agree that prejudgment interest is appropriate in this case, but they disagree as to the applicable rate. Plaintiffs suggest that the state rate of 9% should apply to the award. Defendant argues that the appropriate rate is the federal rate under 28 U.S.C. § 1961.

Here, all of Plaintiffs' remaining claims are federal claims brought under Title VII. Their state law claims were dismissed at summary judgment and during the course of trial. Minutes, ECF 110; Op. & Order, ECF 82. Accordingly, the appropriate rate for prejudgment interest comes from federal statute, 28 U.S.C. § 1961. *See Price v. Stevedoring Servs. of Am.*, 697 F.3d 820, 837 (9th Cir. 2012) ("[W]e have acquiesced to the application of the § 1961 rate with respect to pre-judgment interest in Title VII back pay cases.").

## III.    Back-Pay Awards

"Title VII exists in large part 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Clemens v. Centurylink, Inc.*, 874 F.3d 1113, 1115 (9th Cir. 2017) (quoting *Albermale Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)). "Backpay is one manifestation of this principle." *Id.* at 1116. Under 42 U.S.C. § 2000e-5(g), the court may "order such affirmative action as may be appropriate, which may include . . . reinstatement or hiring of employees, with or without back pay, . . . or any other equitable relief as the court deems appropriate." Thus, under Title VII, "back pay [is] an equitable remedy to be awarded by the

district court in its discretion." *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1069 (9th Cir. 2005).

As described in more detail below, the Court finds that Plaintiffs are entitled to back pay in the following amounts, all subject to prejudgment interest at the rate set by 28 U.S.C. § 1961:

| Jessica Cox | $56,898.64 |
| Judi Durkee | $28,479.66 |
| Christina Lethrud | $17,823.28 |
| Carrie Erlandson | $5,709.92 |
| Katey Baker | $19,029.61 |
| Janel Price | $31,955.15 |

A.    Jessica Cox

Plaintiff Jessica Cox—an autism specialist at NWRESD—made $4,824.49 per month in gross pay and $3,180.73 in benefits. Ex. 45 at 2.[1] Plaintiff Cox began her administrative leave on October 19, 2021, and was out of work until she received her return-to-work letter on May 23, 2022. Plaintiff Cox did not work for 9 business days in October, 15 business days in May, and 6 full months.[2] Altogether, Plaintiff Cox is entitled to $56,898.64 in compensatory back pay.

Defendant argues that Plaintiff Cox could have returned to work in a different position on March 7, 2022. Ex. 512. "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5. Plaintiff Cox, however, testified that the position was for an age group that she did not have experience with, and she never received a response from

---

[1] All exhibits referred to in this Opinion & Order are exhibits admitted at trial.
[2] The Court calculates Plaintiffs' daily wages and benefits by taking their total monthly compensation (wages and benefits), multiplying that by 12 months, dividing that by 52 weeks, and dividing that number by 5 business days. For Plaintiff Cox, for example, that calculation is as follows: (($8,055.22 * 12)/52)/5 = $369.47 per business day

4 – OPINION & ORDER

Defendant when she asked follow-up questions about the position. Plaintiff Cox testified that she did not decline the position. The Court, therefore, finds that Plaintiff Cox is entitled to back pay through May 23, 2022.

Plaintiff Cox also seeks compensation for unpaid personal leave, but Plaintiff Cox has not identified support for this request in the record. The Court, therefore, declines to award damages for unpaid personal leave.

B.    Judi Durkee

Plaintiff Judi Durkee—an early childhood education specialist at NWRESD—earned $7,082.34 in wages and $3,902.69 in benefits each month. Exs. 43, 125. Plaintiff Durkee was placed on unpaid administrative leave on October 19, 2021, until she found alternative employment at the Willamette Education Services District beginning December 2, 2021. In that position, however, she earned $1,600 less per month until she retired on July 1, 2022. Plaintiff Durkee had no income for 9 days in October, the entire month of November, and 1 day in December. She made $1,600 less per month for 22 days in December and six whole months until she retired July 1, 2022. Plaintiff Durkee also testified she did not receive a $1,200 Health Savings Account (HSA) contribution that she would have received in January 2022. *See also* Ex. 43. Altogether, Plaintiff Durkee is entitled to $28,479.66 in back pay.

Defendant argues that Plaintiff Durkee should only be compensated through the end of May 2022, when Plaintiff Durkee was asked to return to work at NWRESD. But Plaintiff testified that she was working for a different ESD at the time, which exercised its right to hold her for 60 days. In other words, had Plaintiff Durkee not retired, she could not have gone back to work for NWRESD until 60 days from May 22, 2022, the date of the return-to-work letter. Defendant argues that Mr. Goldman testified that the ESDs worked out these holds all the time

5 – OPINION & ORDER

such that it was not a bar to Plaintiff's employment. But the Court cannot find this testimony in the record. Nor is there any indication elsewhere that Defendant actually negotiated Plaintiff Durkee's return to work with the Willamette ESD.

Plaintiff Durkee also seeks compensation for her COBRA payment of $660 in November and the loss of 24 days of sick leave. But Plaintiff Durkee did not provide any testimony about the amount of her COBRA payments during trial or the loss of her sick leave, nor has Plaintiff identified anywhere else in the record where the Court can find this information. Thus, Plaintiff Durkee has not shown by a preponderance of the evidence that she is entitled to this additional sum.

### C.   Christina Lethrud

Plaintiff Christina Lethrud—a speech-language pathologist with NWRESD—made $6,262.16 per month in wages and $3,518.42 in benefits. Exs. 44, 127. Plaintiff Lethrud was out of work from October 19, 2021, when she was put on administrative leave until November 30, 2021, when she found replacement work. Plaintiff Lethrud's replacement work paid $700 less per month than her position with NWRESD. Plaintiff Lethrud was also provided with a return-to-work letter on May 23, 2022. In total, Plaintiff Lethrud was out of work completely for 9 days in October and the entire month of November, and she made $700 less per month for 5 months and 15 days in May. Altogether, Plaintiff Lethrud is entitled to $17,823.28 in back pay.

### D.   Carrie Erlandson

Plaintiff Carrie Erlandson—an instructional assistant for NWRESD—earned $2,137.18 in wages and $1,897.00 in benefits each month. Exs. 42, 131. Plaintiff Erlandson was placed on unpaid administrative leave on October 19, 2021, and she testified that she took a job at Moda

6 – OPINION & ORDER

Health in December that replaced her income from NWRESD.[3] Plaintiff Erlandson was therefore out of work for 1 month and 9 days and is entitled to $5,709.92 in back pay.

Plaintiff Erlandson argues that she should also be awarded damages for the period of time after she left her position at Moda Health. The Court disagrees. While the record reflects that the job was short-lived—lasting only a few weeks—there is no evidence as to why Plaintiff Erlandson left that position. The record, therefore, does not support Plaintiff's request for damages after mid-November 2021.

E.    Katey Baker

Plaintiff Katey Baker—an instructional assistant with NWRESD—made $2,090.89 per month in wages and $1,886.36 in benefits each month. Exs. 41, 129. Plaintiff Baker was on unpaid administrative leave from October 19, 2021, until she went on maternity leave on March 11, 2022. Ex. 32. Plaintiff Baker was not paid for 9 days in October, 8 days in March, and 4 whole months. Altogether, this amounts to $19,029.61 in back pay for Plaintiff Baker.

F.    Janel Price

Plaintiff Janel Price—an administrative assistant with NWRESD—made $3,035.20 in wages and $2,327.48 in benefits each month. Ex. 133 (wages and benefits using information from August 2021, when Plaintiff Price did not work extra duty). Plaintiff Price was placed on unpaid leave on October 19, 2021, and found replacement work at a bank on April 4, 2022. Plaintiff Price was not compensated by NWRESD for 9 days in October, 5 whole months, and 1 day in April. Plaintiff Price also testified that she was entitled to an HSA payment in January 2022. She testified that she received 1/3 of her payment—amounting to $1,333.33, Ex. 133—in

---

[3] Plaintiff Erlandson states in her memo that she was employed by Moda Health starting in mid-November, but her testimony at trial was that she was working at Moda Health in December of 2021.

October 2021 and was to receive the remaining 2/3 in January, totaling $2,666.67. Altogether, Plaintiff Price is entitled to $31,955.15 in back pay.

Plaintiff Price asks the Court to compensate her $1.50 an hour for the period she was working at a bank before she received her return-to-work letter from Defendant. Emphasizing that her job at the bank paid her $20 per hour, she argues that she lost "another $1.50 per hour for the standard full time work hours of 166 per month[.]" Pl. Mem. 9. The Court declines to award this amount. Plaintiff Price's testimony was that she was making less at the bank at first. But when asked about her hourly compensation at NWRESD, Plaintiff Price thought it might be $20.80 per hour but "couldn't remember." Plaintiff Price has not identified any other place in the record where the Court can find Plaintiff Price's hourly wage rate, and there is no information in the record as to the number of hours Plaintiff Price worked per month in either position. Thus, the Court declines to assume that Plaintiff lost $1.50 per hour working 166 hours per month.

Defendant asks the Court to reduce Plaintiff Price's monthly compensation from October 19, 2021, to April 4, 2022, for the income she earned from her job at Lowe's Home Improvement. Specifically, Defendant speculates that a "fair assumption would be that she earned $1,000 per month from . . . extra hours" at Lowe's, which should offset her damages. Def. Mem. 6. The Court declines to make such an assumption. Plaintiff Price testified that she began working 20 hours a week at Lowe's prior to being placed on unpaid administrative leave to earn extra money to help her daughters. Once she was placed on leave by NWRESD, her job at Lowe's became her only source of income. She made $5 less in this position and had to pay for health insurance because it was only part-time. She testified that Lowe's was willing to give her extra shifts. But there is no evidence of how many extra hours she was able to consistently work after she was placed on leave. Given the pay discrepancy, increased health care costs, and

8 – OPINION & ORDER

unpredictable work schedule, the Court does not find it appropriate to offset Plaintiff Price's damages award for her time working at Lowe's.

## CONCLUSION

The Court awards the Plaintiffs back pay as described in this Opinion & Order. The parties shall file a joint proposed judgment consistent with this Opinion & Order and the Jury's Verdict within 14 days of this Opinion & Order. A Word version of the proposed judgment shall also be submitted to the Courtroom Deputy.

IT IS SO ORDERED.

DATED: October 25, 2024.

MARCO A. HERNÁNDEZ
Senior United States District Judge